**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ROBERT E. DENTON,

    Plaintiff,

-vs-                                                      Case No. 6:10-cv-1893-Orl-22GJK

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____

## MEMORANDUM OF DECISION

On December 1, 2005, Claimant, Robert E. Denton, filed an application for disability benefits (hereafter "Application"), alleging a disability onset date of January 10, 2003. R. 80-84. On October 15, 2008, a hearing was held before Administrative Law Judge (hereafter "ALJ") Douglas Abruzzo wherein Claimant submitted medical records and amended his Application to allege an onset date of December 12, 2005. R. 798. On December 22, 2008, the hearing was reconvened, Claimant and a vocational expert, Jane Beougher, testified. R. 810. On May 20, 2009, the ALJ issued his decision, denying the Application and finding Claimant was not disabled. R. 9-18.

The Appeals Council denied Claimant's request for review. R. 1. Claimant timely filed the instant appeal. Doc. No. 1. For the reasons discussed more fully below, the ALJ's decision is **REVERSED and REMANDED**, pursuant to sentence four of Section 405(g).

**I.    BACKGROUND**

Claimant was born on June 27, 1964. R. 124. From 1983 to 1990, Claimant served in the Marines. R. 818. On February 3, 2003, Claimant went to the hospital complaining of chest

1

pain. R. 569. Claimant was given nitroglycerin which resolved his pain and was told to follow up at the Veteran's Administration (hereafter "VA") clinic. R. 569. On February 6, 2003, Dr. Beryl Fruth, a treating physician at the VA medical center, indicated that Claimant was treating at the "Chillicothe VAMC" and is "disabled and unable to work at the present time because of his medical problems. [Claimant] has a scheduled appointment in the outpatient clinic on 3/11/03 for further evaluation." R. 324. On March 11, 2003, Dr. Fruth's assessment was that Claimant suffers from coronary heart disease, chronic knee pain, acute back pain, possible hypothryoidism and possible hyperlipidemia. R. 270.

On July 26, 2006, Dr. Daria Marranzini reviewed Claimant's medical records and completed a "Physical Residual Functional Capacity Assessment." R. 361-68. Dr. Marranzini found that Claimant could occasionally lift twenty pounds, frequently lift ten pounds, stand, walk and sit about six hours in an eight hour workday. R. 362. Dr. Marranzini found that Claimant's ability to push and pull was "limited in lower extremities." R. 362. Dr. Marranzini found that Claimant could never climb ladders, ropes or scaffolds, but could occasionally balance and climb ramps or stairs. R. 363. Dr. Marranzini found that Claimant could frequently stoop, kneel, crouch and crawl. R. 363. Dr. Marranzini found that Claimant should avoid concentrated exposure to hazards. R. 365. Dr. Marranzini indicated that she reviewed treating or examining source statements regarding Claimant's physical capacities. R. 367. Dr. Marranzini noted Dr. Fruth's February 6, 2003, statement that Claimant was disabled, but stated that the "objective findings at this time show that a light RFC should be feasible." R. 367.

On December 22, 2006, Dr. Nicolas Bancks reviewed Claimant's records and completed a "Physical Residual Functional Capacity Assessment." R. 476-83. Dr. Bancks found that Claimant could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand, walk and

sit about six hours in an eight hour workday.  R. 477.  Dr. Bancks found that Claimant's ability to push and pull was unlimited.  R. 477.  Dr. Bancks found that Claimant could occasionally balance and climb ladders, ropes and scaffolds.  R. 478.  Dr. Bancks found Claimant could frequently climb ramps or stairs and could frequently stoop, kneel, crouch and crawl.  R. 478.  Dr. Bancks found that Claimant should avoid concentrated exposure to hazards.  R. 480.  Dr. Bancks indicated that he reviewed treating or examining source statements regarding Claimant's physical capacities.  R. 482.  In making his findings, Dr. Bancks stated: "2/3 TD AN OPINION RESERVED TO SS COMMISSIONER, NOT TIMELY AND INCONSISTENT WITH OBJECTIVE CURRENT DATA."  R. 482.

On July 20, 2007, Claimant began treating with Dr. Virgilio D. Lopez, a psychiatrist, "for medication management and monitoring of depression."  R. 494.  Dr. Lopez diagnosed Claimant with anxiety disorder and dysthymic disorder.  R. 495.  Dr. Lopez noted that Claimant's thought processes were logical, relevant and goal directed.  R. 495.  Dr. Lopez noted that Claimant had adequate insight and his judgment for social conventions appeared to be intact.  R. 495.  Dr. Lopez also noted that Claimant's memory for recent and remote events was intact and that his concentration was adequate.  R. 495.  Dr. Lopez noted that Claimant did not have thoughts with psychotic features or suicidal/homicidal ideations and that Claimant did not have any psychomotor retardation/agitation.  R. 495.  On September 23, 2007, Dr. Lopez saw Claimant, and made substantially similar findings.  R. 691-92.

On February 19, 2008, Dr. James Green reviewed Claimant's records and completed a "Physical Residual Functional Capacity Assessment."  R. 541-48.  Dr. Green found that Claimant could occasionally lift twenty pounds, frequently lift ten pounds, stand, walk and sit about six hours in an eight hour workday.  R. 542.  Dr. Green found that Claimant's ability to

3

push and pull was unlimited. R. 542. Dr. Green found that Claimant could occasionally balance, stoop, kneel, crouch and climb ladders, ropes and scaffolds. R. 543. Dr. Green found Claimant could never crawl or climb ramps and stairs. R. 543. Dr. Green found that Claimant should avoid concentrated exposure to extreme cold, heat and hazards. R. 545. Dr. Green indicated that he did not review treating or examining source statements regarding Claimant's physical capacities. R. 547. Dr. Green opined that Claimant "was limited to light exertion with occasional bending," could drive, "do light activities and chores." R. 542, 546.

On March 20, 2008, in addition to making the findings noted in Claimant's initial visit, Dr. Lopez noted that Claimant had a pain level of "8" on a scale of 1 to 10 and had a GAF score of 55. R. 762-63. Dr. Lopez also conducted a depression screen that was "suggestive of moderate depression." R. 763. On September 22, 2008, Dr. Lopez indicated that Claimant had a GAF score of 55, suffered from a pain level of "6" and reiterated the findings in his earlier treatment notes. R. 719-20.

On November 24, 2008, at Claimant's attorney's request, Dr. Lopez filled out interrogatories regarding Claimant's mental impairment. R. 784-88. Dr. Lopez indicated that he had examined Claimant four times and diagnosed him with Anxiety and Depressive disorder. R. 784. Dr. Lopez indicated that Claimant's prognosis was "fair" and he was prescribed Zoloft. R. 784. Dr. Lopez was asked whether "within a reasonable degree of medical certainty, was Mr. Baker's [sic] psychiatric impairment at the level described in this report since at least December 12, 2005?" R. 785.[1] Dr. Lopez responds, "I don't know as I have seen him only since 11-23-07." R. 785.[2]

---

[1] The Court presumes the reference to Mr. Baker is a scrivener's error.

[2] As set forth above, the record indicates that Dr. Lopez first saw Claimant on July 20, 2007. R. 494-95.

Dr. Lopez also completed a Mental Capacities Evaluation form, which defined the following terms:

> MODERATE:  An impairment of slight importance which affects, but does not preclude, ability to function.
>
> MODERATELY SEVERE:  An impairment which seriously and significantly interferes with the ability to perform basic work activities independently, appropriately, and effectively.
>
> SEVERE:  Extreme impairment of ability to function.
>
> SUSTAINED BASIS:  40 hours per week less a reasonable time for lunch and breaks taking into account the effects, if any, of pain and/or prescribed medications.

R. 786.

Dr. Lopez estimated that Claimant would have "moderately-severe" limitations in the following areas:  maintaining social functioning; restriction of activities in daily living; deficiencies in "concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhise [sic])"; having repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behavior)."  R. 786.

Dr. Lopez also opined about Claimant's limitations to perform certain "basic work activities, on a sustained basis, in a routine competitive work setting."  R. 787 (emphasis in original).  Dr. Lopez opined that Claimant would have moderately-severe limitations in the following areas:

1. understanding, remembering and performing simple instructions;

2. sustaining attention and concentration to tasks at work;

3. using good judgment at work;

4. achieving assigned goals and responding to time limits at work; and

5. performing work requiring regular contact with the public.

R. 787. Dr. Lopez further opined that Claimant would have moderate limitations in the following work related activities:

1. relating appropriately to co-workers and supervision;

2. maintaining appropriate behavior in work situations;

3. maintaining appropriate standards of cleanliness;

4. responding appropriately to changes, stress and customary work pressures;

5. maintaining regular production standards; and

6. performing work within a schedule, maintaining regular attendance and being punctual within customary tolerances.

R. 788. Thus, Dr. Lopez opined that Claimant would have moderate difficulties in acting appropriately, responding to work pressures and meeting performance standards.

## II. ADMINISTRATIVE PROCEEDINGS

At the hearing, Claimant testified he was forty-four (44) years old and had a high school education. R. 815-16. Claimant testified that he received $230 from the VA as a result of a left knee injury that was military service-related. R. 817. Claimant testified that he has not worked or volunteered since December 12, 2005. R. 828. Claimant testified that he suffered from a behavior disorder (ADHD), bipolar disorder, frontal lobe brain damage, explosive personality disorder, degenerative disc disease, unstable Angina and acid reflux. R. 829-32, 835, 839. Claimant testified that he took two Tylenol per week for his back and knee pain and Pepcid AC for his acid reflux. R. 835-37.

Claimant testified that he could bathe himself, dress himself, dust, vacuum, mop, place dishes in a dishwasher, perform laundry, take out the trash, grocery shop and prepare sandwiches or microwave dinners. R. 841-42. Claimant testified that he watched television most of the day, but also visited websites, read magazines and science fiction books. R. 843-44. Claimant testified that he collects Hot Wheels and in 2005 traveled to Panama City to visit his son. R. 847.

Claimant testified that he cannot work because of lower back pain and that, because of his behavior disorder, he says inappropriate things that offend others. R. 849. Claimant testified that his back pain "builds up to where I can't do anything. What prevents me from holding the job is my mental problems, my personal behavior." R. 857. Claimant testified that he could only walk a few feet before his back begins to hurt and he can sit for two hours before he has to get up and move. R. 857. Claimant testified that he could lift a gallon of water, but could not lift a forty pound bag of salt. R. 858.

The vocational expert classified Claimant's past relevant work: assembler, DOT number 706.687-101, light physical demand with an SVP of 2, unskilled; hand packager, DOT number 920.587-010, medium physical demand with an SVP of 2, unskilled; certified nursing assistant, DOT number 355.674-014, medium physical demand with an SVP of 4, semi-skilled; delivery driver, DOT number 292.353-014, an SVP of 3, semi-skilled; fast food worker, DOT number 311.472-010, light physical demand with an SVP of 2, unskilled; retail cashier, DOT number 211.462-014, light physical demand with an SVP of 2, unskilled; and mold cutter or mold trimmer, DOT number 663.685-018, light physical demand with an SVP of 2, unskilled. R. 863-66.

The ALJ posed the following hypothetical to the vocational expert:

7

> This hypothetical person is limited to no more than the medium range of exertion as that is defined in our regulations. This person must avoid climbing of ropes or scaffolds or ladders exceeding six feet, and must avoid crawling. This person is limited to no more than occasional pushing and pulling with the lower left extremity, including the operation of pedals unless the pedal requires less than five pounds to operate. Or stated the other way, if the pedal requires less than five pounds, it can be constant or frequent. Anything five pounds or more, it can be no more than occasional. The person must avoid prolonged exposure -- that is defined as six hours of an eight-hour shift -- to temperatures less than 30 degrees Fahrenheit, along with wetness or humidity. Let me see. This person is limited to tasks which are not performed in a production or quota based system. This person is limited to no more than occasional communication about the job. Now in our regulations it actually says interaction, but I find that ill defined. So what I'm essentially saying here is it's okay for these people to walk by each other. It's okay for them to even sit at the same table as long as they don't have to coordinate and communicate about the job.
>
> . . . .
>
> And this person should avoid interaction, communication about the job with the general public.

R. 867-68.

The vocational expert testified that this hypothetical person could work as an assembler, hand packager, certified nursing assistant on the night shift, truck driver and mold cutter. R. 868-70. The vocational expert also testified that this hypothetical person could work as a commercial cleaner, DOT number 381.664-010, medium physical demand with an SVP of 3, semi-skilled; sandwich maker, DOT number 317.664-010, medium physical demand with an SVP of 2; food assembler, DOT number 319.484-010, light physical demand with an SVP of 3, semi-skilled; and surveillance system monitor, DOT number 379.367-010, sedentary with an SVP of 2, unskilled. R. 870-72. The vocational expert testified that this hypothetical person could not perform his past relevant work if he had moderately severe limitations in maintaining

8

social functioning, activities of daily living, using good judgment, achieving assigned goals, responding to time limits, understanding, remembering, performing simple work and sustaining attention and concentration. R. 873-74.

The ALJ made the following significant findings:

1. Claimant "meets the insured status requirements of the Social Security Act through December 31, 2007." R. 11.

2. Claimant has not "engaged in substantial gainful activity since December 12, 2005, the alleged onset date." R. 11 (internal citations omitted).

3. Claimant has the following severe impairments: "lumbar spine degenerative disc disease, left knee degenerative joint disease and a dysthymic disorder." R. 11 (internal citations omitted).

4. Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 12.

5. Claimant has the "residual functional capacity to perform medium work" with the following exceptions: avoid crawling and using ropes, scaffolds and ladders exceeding six feet; "occasional pushing and pulling with the lower left extremity, including operation of pedals unless the pedal requires less than 5 pounds to operate"; avoid prolonged (six hours in an eight hour shift) exposure to temperatures colder than thirty degrees, extreme wetness or humidity; tasks performed are not in a production or quota-based system; occasional communication about the job with supervisors and co-workers; and avoid communication about the job with the general public. R. 14.

6. Claimant can perform his past relevant work. R. 18.

7. Claimant has not suffered from a disability, as defined in the Social Security Act, from December 15, 2005, through the date of the decision. R. 18.

In making his Residual Functional Capacity (hereafter "RFC") determination, the ALJ stated the following:

> In reaching this conclusion, the undersigned has considered the opinions of the State agency medical consultants who evaluated the issue at the initial and reconsideration levels. In July 2006, Dr. Marranzini opined that the claimant was able to lift 20 pounds occasionally and 10 pounds frequently and sit, stand or walk for about six hours in an eight-hour workday with occasionally [sic] climbing of stairs and ramps, but never climbing ladders, ropes or scaffold and occasional balancing. In February 2008, Dr. Green also opined that the claimant was able to lift 20 pounds occasionally and 10 pounds frequently and sit, stand or walk for about six hours in an eight-hour workday with occasional climbing, stooping, kneeling, balancing and crouching but never climbing ladders, ropes or scaffolds. In December 2006, Dr. Bancks opined that the claimant was able to lift 50 pounds occasionally and 25 pounds frequently with occasional balancing and stooping.
>
> As to the opinions of the State agency psychologist, whose opinions were that of non severe mental impairments. While these opinions were reasonable, based on the evidence available at the time, additional evidence received into the record at the hearing level convinces the undersigned that the claimant was somewhat more limited than originally thought.
>
> The undersigned has also considered the opinion evidence of Dr. Virgilio D. Lopez. On November 24, 2008, Virgilio D. Lopez, M.D., a psychiatrist at the Veterans Administration outpatient clinic, opined that the claimant has moderately to severe limitations in his abilities in activities of daily living and moderately to severe limitations in his abilities to maintain social functioning; maintain concentration, persistence or pace; understand, remember and perform simple instructions; use good judgment; achieve assigned goals; and respond to time limits at work and perform work requiring regular contact with the public. Dr. Virgilio also opined that the claimant has moderate limitations

10

>                in his abilities to relate appropriate [sic] to coworkers and
>                supervision; maintain appropriate behavior in work situation;
>                maintain appropriate standards of cleanliness; respond
>                appropriately to changes, stress and customary work pressure;
>                maintain regular production standards at work and perform work
>                within a schedule; maintain regular attendance and be punctual
>                within customary [sic]. <u>The undersigned finds this opinion
>                somewhat inconsistent with the mental status examinations and the
>                claimant's activities of daily living</u>. The medical evidence shows
>                that the claimant is able to take care of his needs. His memory
>                appeared intact. There has been no psychomotor retardation. The
>                claimant denied any suicidal ideations. The claimant did not
>                exhibit evidence of psychosis. The claimant testified that he is
>                able to prepare a sandwich and use a microwave. He is unable to
>                drive because of a suspended license but not because of any mental
>                limitations. He is able to use a computer and visit websites. He
>                collects Hot Wheels and watches television. These activities of
>                daily living not only negate the claimant's allegations concerning
>                his mental functional limitations, but also negate the conclusion
>                that the claimant's mental impairments have imposed moderate to
>                severe limitations.

R. 17-18 (internal citations omitted) (emphasis added).[3] Thus, the ALJ reviewed the opinions from the State agency medical consultants and psychiatrists, as well as Dr. Lopez in making his RFC assessment. The ALJ found Dr. Lopez's opinion was "somewhat inconsistent with the mental status examinations and the claimant's activities of daily living." R. 17.

## III. THE PARTIES' POSITIONS

Claimant raises two issues on appeal: 1) the ALJ erred in finding that Claimant has the RFC to perform medium work with limitations because the ALJ failed to state the weight he gave to Claimant's treating psychiatrist; and 2) the ALJ erred in finding Claimant's statements concerning the intensity, persistence and limiting effects of his symptoms not credible. Doc. No.

---

[3] The ALJ also generally stated that he considered all of Claimant's symptoms and the extent to which they "can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." R. 14. Further, the ALJ stated that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." R. 14.

24 at 1-2. Claimant requests the ALJ's decision be reversed and remanded for an award of disability benefits or remanded for another hearing. Doc. No. 24 at 15.

The Commissioner of Social Security (hereafter "Commissioner") maintains: 1) the ALJ properly considered and weighed Claimant's treating psychiatrist's opinion; and 2) the ALJ's determination that Claimant's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible is supported by the record medical evidence. Doc. No. 25. Thus, the Commissioner maintains the ALJ's decision should be affirmed. Doc. No. 25.

## IV. LEGAL STANDARDS

### A. THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a). In *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. (citations omitted). The steps are followed in order. If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

### B. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

C.   REMEDIES

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). To remand under sentence four, the District Court must either find that the Commissioner's decision applies the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)); *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for District Court to find claimant disabled).

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may also be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985). The District Court may remand a case to the Commissioner for a rehearing under sentences four or

six of 42 U.S.C. § 405(g); or under both sentences. *Jackson*, 99 F.3d at 1089-92, 1095, 1098. Where the District Court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829- 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[4]

## V.    ANALYSIS

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability. The Eleventh Circuit recently clarified the standard the Commissioner is required to utilize when considering medical opinion evidence. In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1179 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, <u>what the claimant can still do despite his or her impairments</u>, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id*. (citing 20 CFR §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). The Eleventh Circuit stated that "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1179

---

[4] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation). After a sentence-four remand, the District Court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

(quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (failure to clearly articulate reasons for giving less weight to the opinion of treating physician constitutes reversible error).

In *Winschel*, the Commissioner argued that the ALJ did not err by failing to state the weight he gave to a treating physician's treatment notes and the reasons therefor because they did not constitute an "opinion." *Id*. at *2. The Eleventh Circuit disagreed because the treatment notes contained "a description of Winschel's symptoms, a diagnosis, and a judgment about the severity of his impairments, and clearly constituted a 'statement[] from [a] physician . . . that reflect[s] judgments about the nature and severity of [Winschel's] impairment(s), including [Winschel's] symptoms, diagnosis and prognosis, what [Winschel] can still do despite impairment(s), and [Winchel's] physical or mental restrictions.'" *Id*. at 2 (quoting 20 CFR §§ 404.1527(a)(2), 416.927(a)(2)). Thus, the treating physician's treatment notes constituted an opinion. *Id*. The Eleventh Circuit noted that the ALJ only referenced the treating physician once and did not state the weight given to the treating physician's opinion. *Id*. The Eleventh Circuit reversed stating that "[i]t is possible that the ALJ considered and rejected these . . . medical opinions, but without clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence." *Id*. at *2.

In this case, the ALJ provided a good summary of the medical evidence in the record. The ALJ indicates he considered the opinions of Drs. Marranzini, Green, Bancks and state agency psychologists. R. 17. The ALJ does not state the weight he gave to these opinions. In

16

regard to Dr. Lopez, the ALJ indicates his opinion is "somewhat inconsistent with the mental status examinations and the claimant's daily activities of daily living." R. 17.

The Commissioner asserts that the ALJ stated the weight given to Dr. Lopez's opinion by indicating it was "inconsistent with the medical evidence and [Claimant's] reported activities and did not provide a basis for finding that Plaintiff had moderately severe functional limitations." Doc. No. 25 at 11. The Commissioner contends that it "is clear from the ALJ's decision that he discounted Dr. Lopez's opinion to the extent that Plaintiff had no more than moderate mental limitations." Doc. No. 25 at 12.

*Winschel* requires the ALJ to state with particularity the weight given to medical opinions and the reasons therefor. *Id.* The ALJ's statement that Dr. Lopez's opinion is "somewhat inconsistent" neither states the weight given, nor the justifying reason. In fact, the ALJ failed to state the weight he gave to any medical opinion that he relied on in reaching his RFC assessment. To the extent the ALJ did not give Dr. Lopez's opinion substantial weight, the ALJ was required to articulate good cause for doing so. *Id.* Good cause is established when the treating doctor's opinion is not bolstered by the evidence, is conclusory or inconsistent with the treating doctor's records or the evidence supports a contrary finding. *Id.* To the extent Dr. Lopez's opinion was not given substantial weight, the ALJ did not provide any basis for doing so.

The Court notes that Dr. Lopez's opinion is not only inconsistent with the other State agency reviewing doctors the ALJ relied on, but that the State agency reviewing doctors' opinions are inconsistent with each other. Drs. Marranzini and Green found that Claimant could occasionally lift twenty pounds and frequently lift ten pounds; Dr. Bancks found that Claimant could occasionally lift fifty and frequently lift twenty pounds. R. 362, 477, 542. Dr. Marranzini found that Claimant's ability to push and pull was limited in his lower extremities; Drs. Green

17

and Bancks found Claimant's ability to push and pull was unlimited. R. 362, 477, 542. Dr. Marranzini found that Claimant could never climb ladders, ropes or scaffolds; could occasionally balance and climb ramps or stairs; and could frequently stoop, kneel, crouch and crawl. R. 363. Dr. Bancks found that Claimant could occasionally balance and climb ladders, ropes and scaffolds; could frequently climb ramps or stairs; and could frequently stoop, kneel, crouch and crawl. R. 478. Dr. Green found that Claimant could occasionally balance, stoop, kneel, crouch; could occasionally climb ladders, ropes and scaffolds; and could never crawl or climb ramps and stairs. R. 543. Drs. Marranzini and Green essentially concluded that Claimant could perform light work. R. 367, 542, 546. In contrast, Dr. Bancks essentially concluded that Claimant could perform medium work. R. 476-83.

The ALJ does not indicate what weight he gave to these conflicting opinions or that of Dr. Lopez.[5] The Court may not speculate why the ALJ gave certain opinions more weight than others. Absent clearly articulated reasons for the ALJ's decision to give some medical opinions more weight than others, the Court cannot determine whether the ALJ's decision is rational and supported by substantial evidence. *See Winschel*, 631 F.3d at 1179. The Court will not affirm an ALJ's decision "when the ALJ fails 'to state with at least some measure of clarity the grounds for his decision, . . . simply because some rationale might have supported the ALJ's conclusion.'" *Id.* quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984).

Assuming arguendo that the ALJ "discounted" Dr. Lopez's opinion, neither reason articulated by the ALJ is adequate. The ALJ found Dr. Lopez's opinion was "somewhat inconsistent" with the mental status examinations indicating that Claimant was cooperative,

---

[5] The Court also notes that the ALJ did not acknowledge, much less the state weight given, Dr. Fruth's opinion that Claimant was disabled. R. 324. Dr. Fruth's opinion was specifically considered and refuted by Drs. Marranzini and Bancks, opinions that the ALJ cited. R. 367, 482.

appeared cognitively intact, had good eye contact, had organized and goal-oriented thought processes, had adequate concentration, had depressed and restricted affect, but no psychomotor agitation. R. 16. The ALJ does not identify the inconsistency between the mental status examinations and Dr. Lopez's opinion.[6] The ALJ does not state how any such inconsistency impacted whatever weight may have been given to Dr. Lopez's opinion. The ALJ must state, with particularity, the weight given to a medical opinion and the reasons therefor. *Id.* Otherwise, the Court is unable to determine whether the ALJ's decision is rational and supported by substantial evidence. *Id.*

The ALJ's finding that Claimant could perform daily activities does not disqualify a claimant from disability. *See Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997). Consequently, it cannot serve as a basis to discount Dr. Lopez's opinion. Because the ALJ did not state the weight given to any of the medical opinions or give reasons therefor, the Court is unable to determine whether the ALJ's decision is supported by substantial evidence.[7]

## VI. CONCLUSION

Based on the foregoing, it is **ORDERED** that the Commissioner's decision is **REVERSED and REMANDED**, pursuant to sentence four of Section 405(g). The Clerk is directed to enter Judgment in favor of Claimant and close the case.

---

[6] In his decision, the ALJ indicates he considered GAF scores of 54, 55 and 70-80 in the mental status examinations. R. 16. The medical record also reflects GAF scores of 50, which indicates severe impairments (R. 504-05, 508, 510, 567). *See McCloud v. Barnhart*, 166 F. App'x. 410, 418 (11th Cir. 2006). On remand, the ALJ should consider and determine what weight to give these GAF scores. *See id.* (directing ALJ, on remand, to consider and determine what weight to place on GAF scores of 45 and 48).

[7] Because this issue is dispositive, the Court does not address the other arguments Claimant raises.

**DONE** and **ORDERED** in Orlando, Florida on March 5, 2012.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests the Clerk Mail
or Deliver Copies of this Order to:

Shea Fugate
Law Office of Shea A. Fugate
P.O. Box 940989
Maitland, Florida 32794

John F. Rudy, III
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida  33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Chief Counsel
Susan Kelm Story, Branch Chief
Joseph P. Palermo, III, Assistant Regional Counsel
Office of the General Counsel
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia  30303-8920

The Honorable Douglas Abruzzo
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Suite 300
3505 Lake Lynda Dr.
Orlando, Florida  32817-9801